## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **DAVID CRUZ, Individually and For Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**3F TECHNOLOGIES, LLC D/B/A PROGRESSIVE TECHNOLOGIES, LLC, FERNANDO FERNANDEZ, RAUL RODRIGUEZ, and ROMAN CORONADO**<br><br>**Defendants.** | Case No. _____<br><br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

## ORIGINAL COMPLAINT

Plaintiff, David Cruz, brings this action against his former employer, 3F Technologies, LLC, d/b/a Progressive Technologies, LLC, and alleges as follows:

### JURISDICTION

1. Plaintiff brings this claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*. to recover unpaid overtime compensation under §16(b) of the FLSA. This Court has jurisdiction under 28 U.S.C. §1331.

### PARTIES

2. Plaintiff, David Cruz ("Cruz" or "Plaintiff"), is domiciled in Harris County, State of Texas, and was employed by Defendants from approximately May, 2019 to September, 2019.

3. Plaintiff Cruz has consented to filing the instant action. (Exhibit "A").

4. Defendant 3F Technologies, LLC, d/b/a Progressive Technologies, LLC ("3F") is a Texas domestic limited liability company with its corporate office located at 3612 Mangum, Suite 204, Houston, TX 77092.

5. Defendant 3F may be served through its registered agent, Fernando F. Fernandez, at 5221 Verdome Lane, Houston, TX 77092.

6. Defendant Fernando Fernandez ("Fernandez") is a major individual domiciled at 5221 Verdome Lane, Houston, Texas 77092.

7. Defendant Roman Coronado ("Coronado") is a major individual domiciled and, upon information and belief, is domiciled in Harris County, Texas and may be served at 3F's corporate office located at 3612 Mangum, Suite 204, Houston, TX 77092.

8. Defendant Raul Rodriguez ("Rodriguez") is a major individual and, upon information and belief, is domiciled in Harris County, Texas and may be served at 3F's corporate office located at 3612 Mangum, Suite 204, Houston, TX 77092.

9. Upon information and belief, Defendants Fernandez, Rodriguez and Coronado all have ownership interests in 3F and are responsible for controlling and overseeing the day-to-day operations of the business, including setting schedules, work assignments and pay structures.

10. Defendants Fernandez, Rodriguez and Coronado operate 3F on a day to-day basis and act directly on behalf of Defendant 3F, as an employer under 29 U.S.C. § 203(d).  Defendants Fernandez, Rodriguez and Coronado are jointly and severally liable as such for the claims described in this Complaint.

11. Defendants Fernandez, Rodriguez, and Coronado are individuals who at all times relevant to this matter acted directly or indirectly in the interest of Defendant 3F, in relationship to Plaintiff; therefore, Defendants Fernandez, Rodriguez and Coronado are joint employers as defined by 29 U.S.C. § 203(d).

12. Defendants Fernandez, Rodriguez and Coronado (1) possessed the power to hire and fire the Plaintiff, (2) supervised and controlled employee work schedules or conditions of

employment, (3) determined the rate and method of payment, and (4) maintained employment records. Therefore, is a statutory employer under the FLSA.

13. Defendant Fernandez is Defendant 3F's manager and director.

14. The time sheets for 3F's employees were turned in to Defendant Fernandez. Defendant Fernandez handled human resouces, timesheets and payroll.

15. Defendant Rodriguez is Defendant 3F's Chief Estimator/Senior Project Manager. He acted as the estimator and walked the job site. Occasionally, Defendant Rodriguez would come check on the installation assignments.

16. Defendant Coronado is Defendant 3F's Vice President of Operations. He hired and fired Plaintiff, and set Plaintiff's rate of pay and pay structure.

## VENUE

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as a significant portion of the facts giving rise to this lawsuit occurred in this District. Specifically, Plaintiff performed work for Defendants in Harris County.

18. Furthermore, Defendants' corporate office is located in Harris County.

## COVERAGE UNDER THE FLSA

19. At all times hereinafter mentioned, Defendants were and are employers within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20. At all times hereinafter mentioned, Defendants were and are an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21. At all times hereinafter mentioned, Defendants were and are an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in

commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

22.	At all times hereinafter mentioned, Plaintiff and the Collective Members (as defined below) were engaged in commerce or in the production of goods for commerce per 29 U.S.C. §§ 206-207.

## THE FACTS

23.	Defendant 3F is a technology company providing copper cabling, fiber optics and coax cabling services.[1]

24.	Defendants hired Plaintiff to install ethernet cable in new commercial buildings.

25.	Plaintiff was employed by Defendants as a lead technician and was paid on an hourly basis.  Defendants paid Plaintiff $18.00 per hour.

26.	Plaintiff worked with co-workers with job titles such as lead technicians, technicians, installers and helpers.

27.	Defendants color-coded the four classes of hourly workers as Green (helpers), Red (installers), Yellow (technicians) and Gray (lead technicians)

28.	Plaintiff was not paid on a salary basis.

29.	Plaintiff was not paid a salary guarantee.

---

[1] https://www.progressive-tech-nologies.com/services.html (last visited October 29, 2019).

30. Defendants misclassified Plaintiff and Collective Members as independent contractors, when in fact, they were employees.

31. At all times relevant to this case, Defendants had knowledge of Plaintiff's regular and overtime work. Defendants approved Plaintiff's work and hours. Plaintiff's work benefitted Defendants.

32. Plaintiff was granted minimal discretion or independent judgment in the method and manner that his work was performed. Instead, many of Plaintiff's job duties as a lead technician were controlled by Defendants. Plaintiff was given a document for each job assignment that detailed all of the work he was expected to perform, how he was expected to perform the work, the exact date and time he was expected to report to the job site, the deadlines for completing the assignments, instructions for using the automated system to confirm service appointments, and requirements for obtaining approval for any deviations from the original scope of the assignment.

33. Plaintiff was required to perform his job under the supervision of one of Defendants or Defendants' employees. Plaintiff's assignment sheets he was given by Defendants specifically state that he was required to check in and check out with Defendants' Project Management. Once Plaintiff had completed the work on each assignment, he was required to send pictures of the completed work to Defendants.

34. Defendants required Plaintiff to wear a uniform identifying him as one of Defendants' employees or as an employee of One Source Building Technologies, a company for whom Defendants sub-contracted to provide cabling services.

35. Plaintiff did not set his own schedule. Instead, his schedule and work hours were determined by Defendants. Because Defendants controlled Plaintiff's work schedule, Plaintiff was not free to do work for other employers.

36. Defendants required Plaintiff and Collective Members to use handwritten time sheets and a smart phone application.

37. The time sheets were turned in to Defendant Fernandez.

38. Plaintiff used cables and cable boxes provided by Defendants to complete his cabling assignments for Defendants. Plaintiff also used ladders provided by the Defendants that were necessary to complete certain job assignments. Defendants also provided other heavy equipment, such as scissor lifts, that Plaintiff and other cable technicians used. The cost of the equipment and supplies provided by Defendants far exceeds the cost of Plaintiff's own tools that he used, such as crimping tools and levels.

39. The determining factor as to whether Plaintiff was an employee or independent contractor under the FLSA cannot be regulated by any contract or agreement. Instead, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test. *See, Rutherford Food Corp. v. McComb,* 331 U.S. 722, 727 (1947). Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent or, rather, is economically dependent upon finding employment in others.

40. Courts generally utilize the following factors to determine economic dependence and employment status:

    a. The degree of control exercised by the alleged employer;

    b. The relative investment of the alleged employer and employee;

    c. The degree to which the employee's opportunity for profit and loss is determined by the employer;

    d. The skill and initiative required in performing the job;

  e.  The permanency of the relationship; and

  f.  The degree to which the alleged employee's tasks are integral to the employer's business.

41. Applying the economic reality test, Plaintiff has established economic dependence on Defendants and that he was an employee and not an independent contractor.

42. Plaintiff was not in business for himself and truly independent, but rather was economically dependent upon employment with Defendants.

43. Plaintiff was not engaged in an occupation or business distinct from that of Defendants.  To the contrary, Plaintiff was the basis for Defendants' business of providing cabling services and thus, constitutes an integral part thereof.

44. Defendants retained complete and total control over the activities of Plaintiff and regulated all aspects of the job.

45. Plaintiff's economic status was inextricably linked to conditions over which Defendants had complete control, including, but not limited to, the assignment and scheduled hours of work shifts, detailed specifications for how he was expected to perform his work, and instructions for obtaining prior approval from Defendants to deviate from job specifications.

46. Plaintiff's financial investment is minor compared to the investment made by Defendants in the business at hand.  All capital and risk belong to Defendants.  Absent Defendants' investment in the provision of customers to whom Plaintiff provides cabling services, no money would be earned.

47. The job of Plaintiff as a lead technician was an integral part of Defendants' business of providing cabling services and was critical to Defendants' success.

48. Furthermore, Defendants required Plaintiff and Collective Members to travel between job sites during the day without paying him for all drive time.

### COLLECTIVE ACTION ALLEGATIONS

49. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

50. Defendants' illegal "straight time for overtime" policy extends beyond Plaintiff.

51. It is the "straight time for overtime" payment plan that is the "policy that is alleged to violate the FLSA" in this FLSA collective action. *Wellman v. Grand Isle Shipyard, Inc.*, No. CIV.A. 14-831, 2014 WL 5810529, at *5 (E.D. La. Nov. 7, 2014) (certifying "straight time for overtime" claim for collective treatment); *Bursell v. Tommy's Seafood Steakhouse*, No. CIV.A. H-06-0386, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006).

52. Defendants have paid numerous hourly workers using the same unlawful scheme.

53. Any differences in job duties do not detract from the fact that these hourly workers were entitled to overtime pay.

54. The workers impacted by Defendants' "straight time for overtime" scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).  Therefore, the collective is properly defined as:

> **All lead technicians, technicians, installers and helpers who worked for 3F Technologies, LLC d/b/a Progressive Technologies, LLC at any time in the past three (3) years.**

### VIOLATION OF THE FAIR LABOR STANDARDS ACT FOR FAILURE TO PAY OVERTIME

55. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

56. Plaintiff reported the hours he worked to Defendants on a regular basis.

57. Plaintiff regularly worked more than forty (40) hours in a workweek.

58. For example, for the week of August 19, 2019 through August 25, 2019, Plaintiff worked a total of fifty-nine (59) hours.

59. If Plaintiff worked fewer than forty (40) hours in a workweek, he would be paid only for the hours he worked.

60. The hours Plaintiff worked are reflected in Defendants' records.

61. Defendants paid Plaintiff at the same hourly rate for all hours worked, including those in excess of forty (40) in a workweek.

62. Rather than receiving time and half as required by the FLSA, Plaintiff only received "straight time" pay for overtime hours worked.

63. This "straight time for overtime" payment scheme violates the FLSA.

64. Defendants were aware of the overtime requirements of the FLSA.

65. Defendants nonetheless failed to pay certain hourly employees, such as Plaintiff, overtime.

66. Defendants' failure to pay overtime to these hourly workers was, and is, a willful violation of the FLSA.

67. By failing to pay Plaintiff and those similarly situated overtime at one-and-one-half times their regular rates, Defendants violated the FLSA's overtime provisions.

68. Defendants owe Plaintiff and those similarly situated the difference between the rate actually paid and the proper overtime rate.

69. Because Defendants knew or showed reckless disregard for whether their pay practices violated the FLSA, Defendants owe these wages for at least the past three (3) years.

70. Defendants are liable to Plaintiff and those similarly situated for an amount equal to all unpaid overtime wages as liquidated damages.

71. Plaintiff and those similarly situated are also entitled to recover all reasonable attorneys' fees and costs incurred in this action.

### PRAYER

WHEREFORE, Plaintiff, David Cruz, prays for relief as follows:

    a. An order allowing this action to proceed as a collective action under the FLSA and directing notice to all hourly employees who received straight time for overtime;

    b. Judgment awarding Plaintiff and those similarly situated all unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA;

    c. An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

    d. All such other and further relief to which Plaintiff and those similarly situated may show themselves to be justly entitled.

Respectfully submitted:

By: /s/ Scott E. Brady
Philip Bohrer  (TX Bar #00792194)
phil@bohrerbrady.com
Scott E. Brady
scott@bohrerbrady.com
Amanda E. McGowen (to be admitted pro hac vice)
amcgowen@bohrerbrady.com
**BOHRER BRADY, LLC**
8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana 70809
Telephone: (225) 925-5297
Facsimile: (225) 231-7000

Trang Q. Tran
**TRAN LAW FIRM, LLP**
2537 S. Gessner, Suite 104
Houston, TX 77063
Telephone: (713) 223-8855
Facsimile: (713) 623-6399
ttran@tranlawllp.com
service@tranlawllp.com

**ATTORNEYS FOR PLAINTIFF**